IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

| | | |
|---|---|---|
| CHAD COOLEY and LAURA COOLEY, | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| vs. | * | No. 4:09CV00332 SWW |
| | * | |
| STATE FARM FIRE AND CASUALTY | * | |
| COMPANY, | * | |
| | * | |
| Defendant. | * | |

**Memorandum Opinion and Order**

Before the Court is plaintiffs' motion for partial summary judgment to which defendant responded.  Plaintiffs filed a reply to the response.  For the reasons stated below, the Court finds the motion should be denied.

**Background**

In June 2007, Chad and Laura Cooley ("the Cooleys") sold their home at 19 Calais Court in Little Rock, Arkansas, to David and Sherry McLario ("the McLarios").  Prior to closing, issues arose concerning disclosures as to the condition of the heat and air system and  water drainage.  After closing, the McLarios discovered drainage problems and defects in the heating and air conditioning system, which resulted in damage to the property, including the heating and air conditioning unit, walls, and carpets.  In December 2007, the McLarios filed a lawsuit against the Cooleys, alleging breach of contract and fraud.

The Cooleys had a personal liability umbrella policy as well as a homeowners insurance policy with defendant State Farm Fire and Casualty Company ("State Farm").  In August 2007, the Cooleys

made a verbal demand on State Farm with respect to the McLarios' claims that are the subject of the lawsuit.  In a letter dated August 28, 2007, State Farm denied coverage.  In October 2007, State Farm again denied coverage on the Cooleys' written demand.  In December 2007, the Cooleys advised State Farm of the lawsuit the McLarios filed against them, and State Farm initially agreed to provide a defense under a reservation of rights.  In February 2009, State Farm determined it had no duty to defend and counsel retained by State Farm was permitted to withdraw his representation of the Cooleys.  The Cooleys filed a lawsuit against State Farm in Pulaski County, Arkansas, Circuit Court on April 6, 2009.  State Farm removed the action to this Court on May 8, 2009.  The Cooleys seek a declaratory judgment as to coverage under their policies.

In the motion now before the Court, the Cooleys seek summary judgment only as to their claim that State Farm has a duty to defend them under the personal liability umbrella policy.  State Farm asserts  there is no coverage under the policy and, therefore, it has no duty to defend.

## Summary Judgment

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  As a prerequisite to summary judgment, a moving party must demonstrate "an absence of evidence to support the non-moving party's case."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has properly supported its motion for summary judgment, the non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The non-moving party may not rest on mere allegations or denials of his pleading but must "come forward with 'specific facts

showing that there is a genuine issue for trial.'" *Id*. at 587 (quoting Fed. R. Civ. P. 56(e)).   Summary

judgment procedures are appropriate when the issues involved are primarily legal rather than factual.

*Cremona v. R. S. Bacon Veneer Co.,* 433 F.3d 617, 620 (8ᵗʰ Cir. 2006).

**Discussion**

As a general matter, the duty to defend is determined by comparing the allegations in the

underlying complaint to the scope of the coverage provided by the insurance policy. *Insurance Co. of*

*North Am. v. Forrest City Country Club,* 819 S.W.2d 296 (Ark. 1991).   If injury or damage within the

policy coverage *could* result from the underlying suit, the duty to defend arises. *Home Indemnity Co.*

*v. City of Marianna,* 727 S.W.2d 375 (Ark. 1987).   "[T]he duty to defend is broader than the duty to

indemnify.   The duty to defend arises when there is a possibility that the injury or damage may fall

within the policy coverage.   Courts must resolve any doubt in favor of the insured in determining

whether a complaint states a claim within the policy coverage."   *Homebank v. Kansas Bankers Sur.*

*Co.,* 2008 WL 2604670, at *3 (E.D.Ark. 2008) (citations omitted).   Any ambiguity in the policy must

be construed in favor of the insureds, and if the policy can reasonably be interpreted to encompass

some of the claims, the insurer is obligated to provide the insured with a defense.   *Murphy Oil USA*

*Inc. v. Unigard Sec. Ins. Co. ("Murphy II"),* 61 S.W.3d 807, 814 (Ark. 2001).

The McLarios claim that after they bought the residence, they discovered various problems,

including pervasive soot damage to the home allegedly caused by leaks in the vents and duct system,

and exposure of the heating and air conditioning units to surface water drainage, causing their

decreased life span.   They assert the Cooleys breached the real estate contract by misrepresenting that

all the repairs required under the contract had been made, failed to supplement the property disclosure

statement by revealing the defects in the heating and cooling systems and drainage issues, and failed

to disclose the significant amount of soot damage.  The McLarios seek rescission of the contract and/or

recovery of all damages caused by the Cooleys' breach of contractual and other duties.

The personal liability umbrella policy ("the Policy") issued by State Farm provides: "Coverage

L - Personal Liability.  If you are legally obligated to pay damages for a loss, we will pay your net loss

minus the retained limit."  *See* Personal Liability Umbrella Policy ("Policy"), Coverages, ¶ 1. Docket

entries 8 (Ex. A) and 18-2.  "Loss" means "a. an accident, including injurious exposure to conditions,

which results in **bodily injury** or **property damage** during the policy period.  Repeated or continuous

exposure to the same general conditions is considered to be one **loss**; or b. the commission of an

offense or series of similar or related offenses, which result in **personal injury** during the policy

period."  Docket entry 18-2, Policy Endorsement, Definitions, ¶ 6.a.  The Policy defines "net loss" as

"the amount you are legally obligated to pay as damages for **bodily injury, personal injury** or

**property damage** . . ."  *Id.*, ¶ 8.a.  "Property damage" is defined as "physical injury or destruction of

tangible property.  This includes loss of use caused by the injury or destruction."  *Id.*, Policy,

Definitions, ¶ 11.

State Farm argues that the damages claimed by the McLarios are not damages for "property

damage" as defined in the Policy, and cite two cases in support of its contention.  In *Unigard Sec. Ins.

Co. v. Murphy Oil USA, Inc.,* 962 S.W.2d 735 (Ark. 1998)("*Murphy Oil I"*), the insured brought suit

against its insurance company after a jury found it liable for a breach of lease in connection with

pollution to property that it had leased.  The Arkansas Supreme Court held that the insurance company

had no duty to indemnify under a comprehensive general liability policy.  The court stated: "We agree

with the insurance carrier that the damages awarded by the Alabama jury did not represent 'sums' that

Murphy Oil became 'legally obligated' to pay 'on account of' or 'because of' any 'property damage.'"

962 S.W.2d at 740.  After discussing analogous cases, the court said:

> In the cases discussed above, the insureds would not have incurred liability 'but for' certain 'property damage.'  Nonetheless, the courts rejected the insureds' assertions that coverage was available. . . . [T]hose cases support our rejection of Murphy Oil's contention that coverage is available to an insured under a CGL policy as long as 'property damage' is merely lurking somewhere in the underlying case.  We reiterate that, whether or not Murphy Oil caused property damage, it sought indemnification for damages that were assessed against it for breach of its lease.  Neither those damages nor the punitive damages assessed for trespass fall within the coverage provisions of any of the insurance policies under consideration.

*Id.* at 743.

One of the cases the Arkansas Supreme Court discussed in *Murphy Oil I* is *Safeco Ins. Co. v. Andrews,* 915 F.2d 500 (9th Cir. 1990).  The insured, Andrews, sold a residence to Kuehl, who subsequently sued Andrews for negligent failure to inspect and inform of certain alleged defects, misrepresentation, breach of contract, and rescission of contract.  The complaint alleged Andrews failed to discover and properly inform Kuehl that the real property had a problem with unstable, shifting and moving earth; that the residence had defective and inadequate electrical wiring, defective plumbing, and severe water leakage in the basement.  Safeco argued it had no duty to defend because the lawsuit did not allege any "property damage" or an "occurrence" as defined in the homeowners policy, which were similar to the definitions of "property damage" and "loss" in the Policy involved in the case before the Court.  The court held there was no duty to defend or indemnify, stating:

> Kuehl's claims do not expose Andrews to liability for any damage to tangible property, but rather for economic loss resulting from Andrews's alleged failure to discover and disclose facts relevant to the property's value and desirability.  Such harm is outside the scope of the policy.  Although the defective condition of the property is an element of Kuehl's claims, the defects cannot, even when interpreting the policy broadly, be considered the *cause* of Kuehl's damages.  The cause of the damage was Andrews's alleged misrepresentations, which are not an 'occurrence' or a 'peril insured against'

under the terms of the policy.  There is, therefore, no potential for liability that arguably comes within the scope of the insurance coverage provided by Safeco.

*Id.* at 502 (emphasis in the original).

In *Qualman v. Bruckmoser,* 471 N.W.2d 282 (Wisc. 1991), another case cited in *Murphy Oil I,* the court held that coverage under a homeowner's policy did not extend to claims against the insureds for intentional or negligent misrepresentation or breach of contract based on their alleged failure to disclose structural defects prior to the sale of their home.  "As in *Safeco*, the Qualmans' claims . . . do not expose the Bruckmosers to liability for any damage to tangible property.  Any property damage that existed in the home existed before the making of the alleged misrepresentations which are the theory of recovery in the complaint."  471 N.W.2d at 285.  "There is no question that the defective condition of the house is an element in the Qualmans' complaint.  Nevertheless, those defects cannot be considered the *cause* of the Qualmans' damages, even when interpreting both the complaint and the policy broadly."  *Id.*  Because the court found no coverage existed for the damages claimed, the court held the insurer had no duty to defend.

The Court finds that the personal liability umbrella policy issued by State Farm to the Cooleys does not cover the damages claimed by the McLarios in the underlying lawsuit.  The policy covers claims for property damage caused by a loss.  The McLarios' claims expose the Cooleys to liability for economic loss damages resulting from the Cooleys' alleged failure to disclose facts relevant to the property.  Any damages recovered would be awarded as a result of a breach of contract or fraud not because of any property damage caused by the Cooleys.  *See Unigard Sec. Ins. Co., supra,* 962 S.W.2d at 740 (failure to comply with an agreement did not constitute property damage).  Because the Court finds that any damages that might be awarded the McLarios would not be covered by the policy, the Court finds State Farm has no duty to defend.

**Conclusion**

IT IS THEREFORE ORDERED that plaintiffs' motion for partial summary judgment [docket entry 8] is denied.

DATED this 31st day of August, 2009.


/s/Susan Webber Wright

UNITED STATES DISTRICT JUDGE