IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

| | | |
|---|---|---|
| CHAD COOLEY and LAURA COOLEY, | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| vs. | * | No. 4:09CV00332 SWW |
| | * | |
| STATE FARM FIRE AND CASUALTY COMPANY, | * | |
| | * | |
| | * | |
| Defendant. | * | |

**Memorandum Opinion and Order**

This is a complaint for declaratory judgment as to the parties' rights under two insurance contracts. Now before the Court is defendant's motion for summary judgment to which plaintiffs responded. Defendant filed a reply to the response. For the reasons stated below, the Court finds the motion should be granted.

**I.**

The Court set forth the background to this complaint in a previous order.[1] Essentially, Plaintiffs Chad and Laura Cooley ("the Cooleys") were insured under a homeowners policy as well as a Personal Liability Umbrella Policy ("PLUP") issued by Defendant State Farm Fire and Casualty Company ("State Farm"). After the Cooleys sold their residence to David and Sherry McLario ("the McLarios"), the McLarios filed suit against the Cooleys alleging various problems with the residence, and seeking recovery for breach of contract, misrepresentations to the effect that all repairs required under the real estate contract had been made, failure to disclose material information concerning the

---

[1] Docket entry 16

condition of the property, constructive fraud, and entitlement to rescission. Defendant State Farm contends there is no duty to defend or to indemnify under either the homeowners policy or the PLUP for a number of reasons: First, the McLarios' complaint does not seek damages because of "property damage" as defined in the two policies. Second, the suit does not seek damages caused by an "occurrence" as defined under the homeowners policy or damages arising out of a "loss" as defined in the PLUP. Third, assuming any "property damage" occurred, such damage would have occurred while the Cooleys still owned the property, and the policies' exclusions would not cover liability for such damages. Fourth, under the homeowners policy, there is no liability coverage for any "property damage" alleged to have occurred after the policy terminated, and the policy terminated at 12:01 a.m. on June 12, 2007, before the sale of the residence was closed. Fifth, to the extent the McLarios assert or may prove their damages were expected or intended by the Cooleys, or were the result of willful and malicious acts of the Cooleys, such damages are excluded under both policies.

## II.

**1.      Damages Claimed Are Not Damages for "Property Damage"**

The insuring agreement for the liability coverage in the homeowners policy provides:

If a claim is made or a suit is brought against an **Insured** for damages because of **bodily injury** or **property damage** to which this coverage applies, caused by an **occurrence**, we will:

1. pay up to our limit of liability for the damages for which the **insured** is legally liable; and

2. provide a defense at our expense by counsel of our choice.

The insuring agreement in the PLUP provides:

If you are legally obligated to pay damages for a **loss**, we will pay your **net loss** minus the **retained limit**.

The homeowners policy defines "property damage" as "physical damage to or destruction of tangible property, including loss of use of this property." The term "loss" is defined in the PLUP as "an accident, including injurious exposure to conditions, which results in **bodily injury** or **property damage** during the policy period. Repeated or continuous exposure to the same general conditions is considered to be one **loss** . . ." The PLUP defines "property damage" as "physical injury to or destruction of tangible property. This includes the loss of use caused by the injury or destruction."

In ruling on plaintiffs' motion for partial summary judgment, the Court found State Farm had no duty to defend under the PLUP because the damages sought by the McLarios are not covered under the policy. Citing the majority rule set forth in *Safeco Ins. Co. v. Andrews,* 915 F.2d 500 (9th Cir. 1990), and discussed with approval by the Arkansas Supreme Court in *Unigard Sec. Ins. Co. v. Murphy Oil USA, Inc.,* 962 S.W.2d 735 (Ark.1998), the Court found that the McLarios' claims for damages were based on the economic loss caused by the Cooleys' alleged failure to disclose facts relevant to the property, not because of any property damage caused by the Cooleys.[2] For the same reasons, the Court finds State Farm has no duty to indemnify under the PLUP or to defend or indemnify under the homeowners policy.

**2. Damages Claimed Not Damages Caused by an "Occurrence" or a "Loss"**

As set forth in the preceding section, the homeowners policy provides liability coverage when the suit is brought against an insured for damages because of "property damage" caused by an "occurrence." The policy defines "occurrence" as follows:

> **'[O]ccurrence**,' when used in Section II of this policy, means an accident, including exposure to conditions, which results in:

---

[2] *See* docket entry 26.

    a.    **bodily injury**; or

    b.    **property damage**;

during the policy period. Repeated or continuous exposure to the same general conditions is considered to be one **occurrence.**

As previously set forth, the PLUP provides liability coverage if the insured is legally obligated to pay damages for a "loss." The definition of "loss" in the PLUP is "an accident, including injurious exposure to conditions, which results in **bodily injury** or **property damage** during the policy period. Repeated or continuous exposure to the same general conditions is considered to be one **loss** . . . "

A similar definition of "occurrence," defining the term in part as an "accident," was addressed in *Continental Ins. Co. v. Hodges,* 534 S.W.2d 764 (Ark. 1976). In that case, the Arkansas Supreme Court stated that the definition of "accident" usually adopted by the courts is "an event that takes place without one's foresight or expectation – an event that proceeds from an unknown cause, or is an unusual effect of a known cause, and therefore not expected." *Id*. at 765 (internal citation and quotation omitted). *See also United States Fid & Guar. Co. v. Continental Cas. Co.,* 120 S.W.3d 556 (Ark. 2003); *Essex Ins. Co. v. Holder*, 261 S.W.3d 456 (Ark. 2007).

The Cooleys argue that property damage that stems from negligent acts constitutes an accident if the resulting damages were unexpected. They cite *Sheets v. Brethren Mut. Ins. Co.*, 679 A.2d 540 (Md. 1996), which held that a negligent misrepresentation may constitute an "occurrence" or "accident." The *Sheets* court recognized that there are several lines of authority on the question of whether any form of negligence can be considered an accident under a liability insurance policy. *Id.* at 546. The Arkansas Supreme Court appears to have aligned itself with those courts which have held that such policies do not cover liability for the natural and probable consequences of the negligence

of the insured. *See Essex Ins. Co. v. Holder,* 261 S.W.3d 456 (Ark. 2007)("[W]e hold that defective workmanship standing alone – resulting in damages only to the work product itself – is not an occurrence under a CGL policy such as the one at issue here.")

The court in *Sheets* also recognized that other jurisdictions hold that negligent misrepresentation is not an accident or occurrence, citing *Safeco Ins. Co. of America v. Andrews, supra,* as the leading case for this proposition. 679 A.2d at 550. As noted earlier, the Arkansas Supreme Court relied heavily on *Andrews* in *Unigard v. Murphy Oil USA, Inc., supra.*

In cases involving alleged misrepresentations made by a seller in connection with the sale of a house, courts in other jurisdictions have reached the conclusion that there was no "accident" or "occurrence." In *Lawyer v. Kountz,* 716 So.2d 493 (La. App. 1998), the purchaser of the house brought an action against the seller to recover for concealment of termite damage and drain defects. The court found there was no "accident" or "occurrence," stating:

> The third party claim brought by defendants against the insurers in this case is based on plaintiffs claims of breach of warranty in selling the property with hidden defects and the alleged misrepresentation of the defendants during the act of sale of the residential property. By the very nature of the lawsuit, plaintiff is seeking a remedy based on the sale of the subject property. An occurrence is defined as an 'accident' in both the Metropolitan policy and the State Farm policy. The basis for the demands against defendants is the *sale* of the property, and we fail to consider the sale of residential property to be an 'accident.' We find that the trial court was clearly wrong in determining that the termite damage was the 'occurrence' which established coverage for plaintiffs claims. The defects in the property which allegedly existed prior to the basis of plaintiff's suit (the sale) cannot be considered an 'occurrence' sufficient to trigger coverage for plaintiff's demands under the express terms of the homeowners's policies.

*Id.* at 497.

Similarly, in *Cincinnati Ins. Co. v. Anders,* 789 N.E.2d 1094 (Ohio 2003), the underlying claim against the insured seller of a dwelling involved an alleged failure to disclose defects, including

structural defects. The court found that the claim against the insured was not for damages arising out of an "occurrence," stating:

> For liability coverage to exist, the property damage must 'aris[e] out of an occurrence,' that is, an accident resulting in property damage. The property damage in this case was alleged to have been caused by the faulty installation of insulation. The occurrence for purposes of the policy was not the nondisclosure of the damage.
>
> The alleged negligent nondisclosure of the structural damage was not an accident that resulted in property damage but, rather, an accident that allegedly caused economic damages. The actual accident was the faulty installation of the insulation, leading to the structural deterioration of the house. The underlying claims of the Anderses against the Hastingses pertain to the nondisclosure of the damage, not the damage itself. Therefore, the underlying claims are outside the scope of the CIC policy.

*Id.* at 1098.

Here, the McLarios allege nondisclosures, misrepresentations, and breach of contract regarding alleged defects in the residence. Any alleged nondisclosure, misrepresentation, or breach of contract was not an accident that resulted in property damage but, rather, was an event that allegedly caused economic damages. Further, as explained in *Lawyer, supra*, the sale of residential property is not an "accident." Because the McLarios in the underlying action do not claim damages because of "property damage" caused by an "occurrence," as required by the homeowners policy, or "property damage" caused by an "accident" as required by the PLUP, neither policy provides coverage, nor a duty to defend, with respect to the claims made by the McLarios against the Cooleys.

**3.      Exclusion for "Property Damage" to Property Owned by Insured**

Even if the requirements of the policies were met in this case, exclusions contained in the homeowners policy and the PLUP would apply. The pertinent exclusions contained in the homeowners policy provide:

> Coverage L does not apply to:

> \* \* \*
>
> b.   **property damage** to property currently owned by any **insured**;
>
> c.   **property damage** to property rented to, occupied or used by or in the care of any **insured**. This exclusion does not apply to **property damage** caused by fire, smoke or explosion. . . .

The substantially similar exclusion contained in the PLUP provides:

> We will not provide insurance:
>
> \* \* \*
>
> 3.   for **property damage** to:
>
>   a.   your own property . . . .

The Cooleys argue that this exclusion may not apply because some of the alleged problems and defects that existed before the sale continued to exist after the sale. They cite no cases in support of their argument. In *Shelter Mut. Ins. Co. v. Ballew,* 203 S.W.3d 789 (Mo. App. 2006), the court held that whether there was claim that property damage continued to occur after the sale of the property was irrelevant to the coverage issue:

> In the underlying action, the Robleses allege that during the sale of the home: the Ballews represented to them that the residence was free of defects; that these representations were false; that the Robleses relied on the representations of the Ballews; and as a result, suffered damages 'in the form of necessary repairs to their home.' Implicit in these allegations is the fact that these defects existed prior to the sale of the home to the Robleses. The type of negligence that is claimed in the underlying action is that which would have had to occur while the Ballews owned the property. Otherwise, there would have been no false representations. Thus, it was property damage to property owned by the Ballews that gave rise to this cause of action.
>
> As previously mentioned, whether an underlying petition has alleged a claim that is covered by the terms of the insurance policy is not dependent on a factual determination of the underlying claims, it is a legal question to be determined based on the allegations contained in the petition. The Ballews argue that the specific damage the Robleses complain of did not occur until after the sale had been completed. This is irrelevant. Whether, in fact, damage occurred to the property before or after the sale

is a question to be determined in the underlying action and is not the subject of this declaratory judgment action.

203 S.W.3d at 793 (citations and footnote omitted).

The McLarios' allegations clearly relate to defects that arose and/or existed during the time the Cooleys owned and resided in the residence. Under these circumstances, even if the claims of the McLarios were claims for "property damage" caused by an "occurrence" or "accident," the Court finds there is no coverage because of the owned property exclusions.

**4.     Coverage Under Homeowners Policy Terminated**

The Cooleys' homeowners policy terminated on the day the Cooleys transferred ownership of the residence to the McLarios, some time on June 12, 2007. As shown by the declarations page of the policy, "The policy period begins and ends at 12:01 AM standard time at the residence premises. COVERAGE CEASED JUN 12 2007."[3]

The McLarios' claims arose out of the sale of the property, which occurred after the homeowners policy expired. A Condition of the homeowners policy provides:

> **Policy Period.** This policy applies only to loss under Section I or **bodily injury** or **property damage** under Section II which occurs during the period this policy is in effect.

The Cooleys do not dispute that coverage ceased on June 12, 2007, but assert they did not and would not have authorized the termination of their policy when they still owned the residence, which they did at 12:01 a.m. on June 12, 2007.

Again, the claims of the McLarios are not claims for damages because of "property damage." Even if they were, and the damages occurred while the homeowners policy was in effect, the damages

---

[3]Br. in Supp. Def's. Mot. Summ. J., Ex. A.

would be excluded by the "owned property" exclusion as discussed above. On the other hand, if the claim is that damages did not occur until after the homeowners policy expired, the Court finds there was no "property damage" during the policy period of the homeowners policy.

**5.     Exclusion for Expended/Intended Damage or Willful and Malicious Acts**

The homeowners policy contains an exclusion which provides:

Coverage L and Coverage M do not apply to:

a.     **bodily injury** or **property damage;**

   (1)     which is either expected or intended by the **insured**; or

   (2)     which is the result of willful and malicious acts of the insured . . . .

The PLUP contains a virtually identical exclusion.

Some of the allegations made by the McLarios against the Cooley could be construed to state that any damages the McLarios sustained because of "property damage" were either expected or intended by the Cooleys. One of their claims is for fraud, which is an intentional tort under Arkansas law.[4] To the extent the Cooleys allege they sustained property damage that was expected or intended, the Court finds the policies would exclude coverage.

### III.

The Court finds there is no genuine issue of material fact in dispute and that defendant is entitled to the relief sought in its complaint. The Court finds State Farm has no duty to defend or indemnify plaintiffs as to the McLarios claims against them in the underlying action.

---

[4] Arkansas law does not recognize a cause of action for negligent misrepresentation. *South County, Inc. v. First Western Loan Co.,* 871 S.W.2d 325 (Ark. 1994).

IT IS THEREFORE ORDERED that defendant's motion for summary judgment [docket entry 21] is granted.  Judgment will be entered accordingly.

DATED this 16th day of October, 2009.

/s/Susan Webber Wright

UNITED STATES DISTRICT JUDGE